COMMONWEALTH, EX REL., v. N. Y. ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 10, 1890—Decided November 3, 1890.

1. Proceedings by mandamus to compel a railroad company to reconstruct a public highway injuriously occupied by it, may be instituted on the relation of the road commissioners of the proper township, acting officially, and the consent of the attorney general of the commonwealth thereto is unnecessary.
2. Under § 2, act of March 15, 1847, P. L. 361, the acts of May 25, 1881, P. L. 32, and June 24, 1885, P. L. 150, not conflicting, where the principal office of the company is without the state, the writ of alternative mandamus may issue from the county where its works are situate and be served upon a director residing in an adjoining county.
3. Where a railroad company, against which such proceedings are instituted, has succeeded by purchase to the franchises, etc., of another company which originally occupied the highway, it becomes subject to the duties and liabilities relating thereto which rested upon the original company; nor is it relieved therefrom by the statute of limitations.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 164 October Term 1890, Sup. Ct.; court below, number and term not given.

On April 27, 1887, upon the petition of W. C. Tyler and others, road commissioners of Cornplanter township, a rule was issued upon the New York, Pennsylvania & Ohio Railroad Company, to show cause why a mandamus should not issue requiring said company to reconstruct a certain public highway generally known as the Franklin and Oil City road, between Reno and Oil City, in said township. The rule was served upon M. C. Flower, " agent in the office of " the defendant

company, "there being no president, vice president, secretary, treasurer or director in my bailiwick."

Depositions on the part of the relators having been filed, an alternative writ of mandamus in 'the name of the commonwealth, ex rel. W. C. Tyler, etc., was awarded as prayed for, on November 28, 1887, and said writ was served on M. C. Flower, agent of said company at Franklin, Venango Co., Pa., and "by leaving a true and attested copy of the same at the office of said company in Oil City, in said county, with A. N. Simmons, at that time in charge of said office, for Mr. D. W. Guernsy, the agent of said company," and afterwards upon D. V. Derickson, a director of said company residing at Meadville, Crawford county, Pa.

A return and a supplementary return having been filed by the defendant company, the relators on April 3, 1888, filed a "reply and demurrer," and on April 11th, the defendant filed a "rejoinder."

The facts shown by the pleadings, so far as undisputed, were in substance as follows: In 1807, a public highway, claimed to be the one in controversy, was laid out and opened in due and legal course. Thirty years afterward, a company was incorporated to construct a turnpike over substantially the same route, but it continued to be maintained as a public highway until about 1862, when the Franklin & Oil Creek Turnpike Company was incorporated, took possession of the highway under its charter, and improved and maintained it as a toll road until in 1865, when the Atlantic & Great Western Railroad Company, in the construction of its roadbed, so encroached upon the turnpike as to injure it materially. Thereupon the turnpike company abandoned the road, and it became and was once more maintained by the township as a public highway. In 1871, the franchises, etc., of the Atlantic & Great Western Railroad Company were sold, and the purchasers organized as a railroad company under the name of the New York, Pennsylvania & Ohio Railroad Company, the defendant in this proceeding. The principal office of the defendant company was at Cleveland, Ohio, but its principal place of business in Pennsylvania was at Meadville, Crawford Co., Pa., where an office was maintained and where Mr. Derickson, one of its directors, resided.

Opinion of Court below.

On August 30, 1888, the defendant company filed a motion that all the proceedings be quashed, for the reasons :

1. They were commenced without authority from the attorney general of the commonwealth.

2. The alternative writ was not issued in accordance with the petition.

3. The court has no jurisdiction of the case as presented on the face of the papers on file.

4. As appears by all the papers on file, the plaintiffs have no cause of action.

On January 14, 1889, the motion to quash having been argued, the court, TAYLOR, P. J., filed the following opinion :

The petition alleges that the defendant company, in the construction and operation of their road, occupied a part of the public road situate in the township of Cornplanter, county of Venango, particularly described therein, and that they had not constructed a good and sufficient road for the accommodation of the public, praying for a mandamus commanding the defendant to make such road, etc. An alternative writ was issued, which was returned served upon an agent of the defendant at Franklin, in this county. A demurrer and replication was then filed, after which the writ was served upon D. V. Derickson, a director of the company living at Meadville, in the adjoining county of Crawford. An answer and replication was then filed, when, upon motion by the defendant, a rule to show cause why all the proceedings should not be quashed was granted. Upon this rule, testimony was taken which showed conclusively and was not controverted that the principal place of business of the respondent and the residence of its principal officers and offices was in the state of Ohio, and that its principal place of business in this state was at Meadville, in the county of Crawford.

The jurisdiction of the court is the only question raised. The act of June 14, 1836, [P. L. 626], inter alia provides " That the several courts of Common Pleas, the president judge being present, shall, within their respective counties, have the like power with the Supreme Court to issue writs of mandamus to all officers and magistrates, elected or appointed, in or for the respective county, or in or for any township, district,

Opinion of Court below.

or place within such county, and to all corporations, being or
having their chief place of business within such county." In
1845, this statute was before the Supreme Court for construc-
tion, and it was then ruled " that a Court of Common Pleas can-
not issue a mandamus to a railroad company, whose office and
chief place of business is not in such county, although their
road may pass through the same: " Whitemarsh Tp. v. Rail-
road Co., 8 W. & S. 365.

In 1847, the legislature, evidently to remedy the evil or in-
convenience of the want of power in the courts, by the second
section of the act approved March 15, 1847, [P. L. 361,] enact-
ed, " That in all cases where any company has been incorporated
by this commonwealth, and the principal office for the transac-
tion of business thereof shall be located out of this state, or,
where the president, treasurer, cashier or other principal officer
of such company shall reside out of this state, it shall be law-
ful to sue such company in any county of this state, where the
works of such company shall be located, or adjoining thereto,
or where any director, manager or other officer of such com-
pany shall reside; and service of legal process upon such di-
rector, manager or other officer shall be valid and effective
upon said company; and such company shall be taken to be
both in law and in equity for every purpose of legal proceed-
ings, to be located in this state; and shall also be liable to the
writs of quo warranto, mandamus, attachment and execution;
and service of such writ upon any manager, director or other
officer of such company, shall be, to all intents and purposes,
as effective as if served upon the president of such company,
and he resident of this state, and as if the locality of such com-
pany's office were within this state."

It is urged upon the part of the respondent that under this
act the service can only be made within the county in which
the writ is issued, and that the act approved May 25, 1881,
[P. L. 32,] repeals the act of 1847 before recited. The act of
May, 1881, is a supplement to the act of 1836, and provides
that it be amended to read as follows: . . . . . There is no
repealing clause, and if any act is repealed it is by implication
only. The act of 1881 is an affirmative act, and no mention
is made of the act of 1847 in any of its provisions. And if
such a construction can be placed upon the latter act as that

Opinion of Court below.

both may stand, it is our plain duty to so construe it. " Repeal by implication is not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable: " Endlich on Statutes, 280.

The act of 1881 invests the court with power to grant the writ of mandamus in certain specified cases. And, if there was no prior act in force, extending or enlarging that power, the court could not entertain jurisdiction, upon the well established rule that certain objects being specified, all not specified are excluded. But the act of 1847 was in force at that time; and, as the legislature did not limit the power of the courts to ·the objects specified in the latter act, and as the legislature is presumed to be familiar with every act they propose to amend or supplement (a violent presumption, I must admit,) and as both acts can be reconciled as not in conflict, I am of the opinion that the act of 1847 was not repealed.

That act seems to have been passed to meet just such a case as the one under consideration. It provides "that it shall be lawful to sue such company in any county in the state where the works of such company shall be located, or adjoining thereto, or, where any director, manager or other officer shall reside," etc. If service could only be had in a county where one of these officers resides, the evil in the act of 1836, which is sought to be remedied, would still remain. And the important amendment, viz., the bringing of suit in any county where the works are located or adjoining thereto, would be a dead letter upon the statute book; and, that the power to simply bring suit was not the intention of the legislature is clearly evidenced by the further provision in immediate connection, to wit, " and such company shall be taken to be both in law and equity, for every purpose of legal proceedings," etc. I am of the opinion that the works of the company being located in this county a service of the writ upon a director in an adjoining county was valid. For the reasons given the rule must be discharged.[1]

The cause was called for trial on February 10, 1890. Be-

fore the jury was sworn, the defendant again filed a motion to quash the alternative writ of mandamus, " for the reason that the same was not issued upon information by the attorney general, or with his consent, or at his instance ; as appears from the record."

By the court: Motion refused; exception.²

At the close of the testimony submitted, the court, Taylor, P. J., charged the jury in part as follows:

The thirteenth section of the act of February 19, 1849, P. L. 85, provides as follows, which is the rule to be laid down in this case for your guidance : " If any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road." That is what you are to apply to this case. If they have occupied any portion of the road, then they are to reconstruct it again, in the most favorable location, and in as perfect a manner as the original road at the time they took it. . . . .

It is in evidence, or conceded, that the turnpike company abandoned the road shortly after the construction of the railroad ; or, that the abandonment was about twenty-five years ago ; and from that time until the present the township has had charge of it. Upon the abandonment of the road it reverted to the township authorities, and it was their duty to have the road reconstructed, if necessary, or to compel the railroad company to do so, if they had occupied any portion of the public road, and had not constructed as good a one for the use of the public.

" A public road is ordinarily opened as nearly as possible to the diagram returned with the report. In process of time gradual alterations may be made until, perhaps in seventy-five or one hundred years, the original track used by the public will be found to have been gradually changed, and ground disused in consequence of the shifting of the road is so far abandoned that it may not be resumed after twenty-one years without the owner's consent. The public has the right to the enjoyment of its franchise according to its actual occupancy, and are entitled to the breadth of road as laid out from the centre of the traveled track."

Charge of Court below.

This is the general rule. In the present issue, the turnpike company had occupied, either in whole or in part, the original location, or at least occupied thirty feet, as a general rule, but not in every instance, adhered to. In the use of its franchise, and at the time of the building of the railway, it had possession in breadth of the roadway as you may find it; and, if defendants occupied or changed the site of the public road, they were bound to cause the same to be reconstructed in the most favorable location, of the same width, and in as perfect a manner as was the road when they occupied it. [There are some cases, where after great lapse of time, and after improvements have been honestly made upon the faith of appearances, and when parties could not have learned the true situation, and possession thus taken has been acquiesced in for more than twenty-one years, an equitable estoppel would be allowed, but, in my opinion, this is not one of those cases. The defendants purchased the franchise at sheriff's sale and they took it cum onere; that is, with its burdens and subject to all the duties and liabilities existing against the original road constructing the same.] [5]

You will therefore find first: Where was the traveled track at the time the railroad was built? What was the width of the occupancy of the turnpike company at that time? Then, from the centre of the traveled track, did the railroad company occupy any portion of that occupied by the public, within the ninety-nine rods complained of, and, if so, have they constructed as good a road in the most favorable location? If so, you will find for the defendant. If not, then you will say for what distance, or all of the distance, they have not, and find for the plaintiffs for that part they have not so reconstructed. . . . . .

The defendant requests the court to charge:

4. That, although the statute of limitations will not run against the commonwealth, it will run against a municipal corporation; and, as the plaintiffs' cause of action, if any, was complete on the construction of the road, which was more than twenty-one years before the commencement of this suit, the action is barred by the statute of limitations.

Answer: Answered in the negative. The statute of limitations does not run against the public. [15]

—The jury returned a verdict for the commonwealth, find-

Arguments.

ing that the defendant company had encroached upon and oc-
cupied a part of the public highway for the whole distance
complained of, and that they had not reconstructed said high-
way, etc.   A rule for a new trial having been discharged,
judgment was entered on the verdict for costs, whereupon the
defendant took this appeal, assigning for error:

1. The discharge of the rule to quash.[1]
2. The refusal of the motion to quash.[2]
5. The portion of the charge embraced in [ ] [5]
15. The refusal of defendant's point.[15]

*Mr. John O. McCalmont* (with him *Mr. B. H. Osborn, Mr.
L. A. Russell* and *Mr. William L. Rice*, for the appellant.

Counsel cited: (1) Section 18, act of June 14, 1836, P. L.
626 ; Whitemarsh Tp. v. Railroad Co., 8 W. & S. 365 ; § 2, act
of March 15, 1847, P. L. 361; act of May 25, 1881, P. L. 32;
act of June 24, 1885, P. L. 150.   (2) Heffner v. Common-
wealth, 28 Pa. 108; Green's Brice's Ultra Vires, 700; Pitts-
burgh etc. R. Co. v. Commonwealth, 104 Pa. 583; Buffalo etc.
R. Co. v. Commonwealth, 120 Pa. 537.   (5) Commonwealth's
App., 4 Pa. 164; Arnold's Est., 46 Pa. 277; 2 Dillon on Mun.
Corp., § 528; 3 Wood's Ry. Law, 1644–45.   (15) Evans v.
Erie Co., 66 Pa. 222; Glover v. Wilson, 6 Pa. 290.

*Mr. C. Heydrick* and *Mr. E. H. Lamberton,* for the appellees.

Counsel cited: (1) Section 2, act of March 15, 1847, P. L.
361; § 14, act of February 19, 1849, P. L. 85; § 1, act of
March 17, 1856, P. L. 388.   (2) Hall v. Railroad Co., 3 Dill.
515; Union Pac. R. Co. v. Hall, 91 U. S. 343; Heffner v.
Commonwealth, 28 Pa. 108; Commonwealth v. Messer, 44 Pa.
341; Uniontown Bor. v. Veech, 34 Pa. 293; Lamb v. Lynd,
44 Pa. 336; Porter Tp. v. Overseers, 82 Pa. 275; Common-
wealth v. Berks Co., 109 Pa. 214.   (5) Pittsb. etc. R. Co. v.
Commonwealth, 104 Pa. 583; Commonwealth v. Railroad Co.,
117 Pa. 637.   (6) Pittsb. etc. Ry. Co. v. Commonwealth, 101
Pa. 192; Commonwealth v. Railroad Co., 117 Pa. 637; Barter
v. Commonwealth, 3 P. & W. 253; Commonwealth v. Albur-
ger, 1 Wh. 469; Commonwealth v. McDonald, 16 S. & R. 395;
Philadelphia v. Railroad Co., 58 Pa. 253; North. Cent. Ry. Co.
v. Commonwealth, 90 Pa. 300.

Statement of Facts.

PER CURIAM:

While both the record and the paper-books in this case are voluminous, we find little in either that requires discussion. The motion to quash was properly refused. The consent of the attorney general was not necessary to the commencement of the proceedings. It was sufficient that they were instituted by the road commissioners acting in their official capacity. So much was said in Whitemarsh Tp. v. Railroad Co., 8 W. & S. 365. Nor, have we any doubt as to the jurisdiction. The pleadings establish all the facts necessary to give the Common Pleas of Venango county jurisdiction, and we think the service sufficient. We find nothing to criticise in the trial below.

Judgment affirmed.

